IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| v. | * | Crim. No. MJM-21-120 |
| | | Civ. No. MJM-24-1450 |
| **RICO KENDALL DASHIELL,** | * | |
| **Petitioner.** | * | |

\* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

Petitioner Rico Kendall Dashiell ("Petitioner") filed a Motion to Vacate Judgment Pursuant to 28 U.S.C. § 2255. ECF No. 205. Respondent United States (the "Government") filed a response opposing the motion. ECF No. 218. An evidentiary hearing is not warranted. *See* Rule 8(a), *Rules Governing § 2255 Proceedings for the United States Dist. Cts.*; Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, the motion shall be denied, and a certificate of appealability shall not issue.

I.      **BACKGROUND**

The facts of the underlying criminal case were stipulated to in Petitioner's plea agreement. ECF No. 62 at 11–13 (Stipulation of Facts). Although Petitioner disputes a fact recited at his sentencing hearing, the facts stipulated in the plea agreement are not in dispute.

On December 23, 2020, Petitioner, along with his two co-defendants, entered an AT&T store in Owings Mills, Maryland. *Id.* After entering the store and initially acting like a customer, Petitioner brandished a firearm and pointed it toward a victim employee. *Id.* Petitioner told the victim, "If you don't want to die today, do what I say." *Id.* A victim customer was directed to empty his pockets and several items were stolen from him, including his wallet and an iPhone 8S Plus. *Id.* Petitioner then ordered a victim employee to walk to the back of the store, escorted them to the store's safe at gunpoint, and ordered the victim to open it. *Id.* When the victim complied,

1

Petitioner and his co-defendants emptied the contents of the safe, including 76 devices valued at $48,767, and placed them in trash bags. *Id.* Petitioner then ordered a victim employee to empty the cash register and stole $322. Finally, before leaving the store, one of Petitioner's co-defendants pepper sprayed all three of the victims. *Id.* at 2. The trio then fled in a stolen vehicle. Law enforcement then used a GPS device to locate Petitioner and his co-defendants and later arrested them. *Id.*

On April 22, 2021, Petitioner was charged by indictment with one count of Interference with Interstate Commerce by Robbery under 18 U.S.C. § 1951(a), or Hobbs Act Robbery (Count Three), and one count of Brandishing a Firearm During the Commission of a Crime of Violence under 18 U.S.C. § 924(c) (Count Four). ECF No. 1 (Indictment). On February 12, 2022, Petitioner entered into a plea agreement with the Government pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, stipulating that a sentence of imprisonment for a total of 144 months was the appropriate disposition of the case. ECF No. 62. In accordance with the plea agreement, on March 31, 2022, Petitioner entered pleas of guilty to both counts in which he was charged.

The Court ultimately accepted the parties' agreement and, on September 7, 2022, sentenced Petitioner to the stipulated prison term of 144 months. ECF No. 84 (Judgment and Commitment Order). Specifically, the Court imposed 60 months as to Count Three, 84 months as to Count Four, and two concurrent three-year terms of supervised release. *Id.* During the sentencing hearing, the Court adopted the sentencing guidelines computation from the PSR, which determined a range of 63 to 78 months of imprisonment for Count Three and a mandatory consecutive 84 months of imprisonment for Count Four. ECF No. 210 at 8:2–5, 22:20–23. The Court considered the nature and circumstances of the offense and history and characteristics of Petitioner, consistent with 18 U.S.C. § 3553(a). *Id.* at 21:6–23: 14. While recounting the serious and violent nature of the offense,

the Court erroneously attributed the act of pepper spraying the victims to Petitioner. *Id.* at 22: 2–3. Nonetheless, the Court imposed the parties' stipulated total sentence of 12 years, noting that it was three months below the advisory guidelines range but finding it to be sufficient and not greater than necessary to comply with the purposes of sentencing. *Id.* at 22:15 – 23:8.

Petitioner is presently incarcerated at Federal Correctional Institution, Hazelton ("FCI-Hazelton") in West Virginia. On May 5, 2024, Petitioner filed a Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, pursuant to 28 U.S.C. § 2255 (the "Motion"). ECF No. 205. The Motion was filed approximately one year and seven months after Petitioner's conviction became final. In his Motion, Petitioner requests equitable tolling due to extraordinary circumstances preventing the timely filing of his Motion and raises two grounds for relief based upon ineffective assistance of counsel. *Id.* The Government filed a response in opposition to the Motion on July 29, 2024. ECF No. 218. Petitioner requested an extension of time to file a reply, ECF No. 243, which the Court granted, setting a deadline of September 23, 2024, ECF No. 244. Petitioner did not file a timely reply.

## II.     LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255, a prisoner serving a federal sentence in custody may seek to vacate, set aside, or correct his sentence on the ground that (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence "is otherwise subject to collateral attack[.]"

"In deciding whether to grant an evidentiary hearing [on a habeas petition], a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v.*

3

*Landrigan*, 550 U.S. 465, 474 (2007) (citation omitted). If, on the other hand, "the record refutes the [petitioner's] factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*; *see also Berry v. United States*, 884 F. Supp. 2d 453, 463 (E.D. Va. 2012) (declining to hold an evidentiary hearing where the factual record precludes the possibility of relief). Such a determination falls within the district court's discretion. *See Shriro*, 550 U.S. at 475. In cases where a conviction is based on a guilty plea, the court's analysis is usually "confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989).

### III. ANALYSIS

#### A. Untimeliness of the Motion

A one-year statutory deadline applies to motions to vacate or correct a conviction or sentence under 28 U.S.C. § 2255. The one-year period runs from the latest of:

> (1) The date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

If the Motion is untimely, the court will apply equitable tolling in "those 'rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" *Whiteside v.*

4

*United States*, 775 F.3d 180, 184 (4th Cir. 2014) (quoting *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc)). A petitioner is entitled to equitable tolling only "if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing" *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Courts in the Fourth Circuit have held that events ordinary to prison life such as "'[t]ransfers between prison facilities, solitary confinement, lockdowns, restricted access to the law library and an inability to secure court documents do not qualify as extraordinary circumstances' that would warrant equitable tolling." *United States v. Piner*, No. 3:18CR15, 2022 WL 1720358, at *3 (E.D. Va. May 27, 2022) (quoting *Allen v. Johnson*, 602 F. Supp. 2d 724, 727–28 (E.D. Va. 2000)); *see also United States v. Ray v. United States*, No. 7:15-CR-46-FL-3, 2023 WL 3400577 (E.D.N.C. Apr. 6, 2023); *United States v. Trent*, No. 4:18-cr-00011, 2023 WL 4932095 (W.D. Va. Aug. 2, 2023).

Petitioner claims that he handed the Motion over to be filed a week before the one-year deadline but a series of lockdowns, slow processing of outgoing mail, and inaction by prison staff at FCI-Hazelton thwarted timely filing. ECF No. 205-2 at 1. When he discovered that the Motion had not been filed, Petitioner undertook to file the Motion a second time. *Id.* at 1–2. He argues that the lockdowns and inaction by prison staff should excuse his untimely filing of the Motion. ECF No. 205 at 11.

The Court will assume without deciding that the circumstances described by Petitioner are true and sufficient to warrant equitable tolling, treat the Motion as timely filed, and address Petitioner's Motion on the merits.

5

## B. Ineffective Assistance of Counsel

The Sixth Amendment to the U.S. Constitution guarantees a criminal defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, 580 U.S. 100, 118 (2017). To mount a successful challenge based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687–88. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see also Buck*, 580 U.S. at 118–19.

As to the first prong, the petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688; *see also Harrington v. Richter*, 562 U.S. 86, 104 (2011). The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.* at 105 (quoting *Strickland*, 466 U.S. at 690). The Supreme Court has reiterated that the "first prong sets a high bar." *Buck*, 580 U.S. at 118. Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Id.* (citation omitted). The standard for assessing such competence carries "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Judicial review of counsel's performance is "highly deferential" and is not based on hindsight. *Stokes v. Stirling*, 10 F. 4th 236, 246 (4th Cir. 2021) (citing *Strickland*, 466 U.S. at 689).

Second, the petitioner must show that his attorney's deficient performance "prejudiced" the representation. *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong" in the context of

a guilty plea, a petitioner must show that there is a reasonable probability that he would have insisted on going to trial but for the counsel's errors or that the errors otherwise affected the plea process. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 694. A strong presumption of adequacy attaches to counsel's conduct, so strong that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id*. at 696.

Petitioner advances two collateral attacks on his sentence based on claims of ineffective assistance of counsel. First, Petitioner claims that his counsel failed to object to erroneous statements in the plea agreement, in the PSR, and by the Court at sentencing that Petitioner pepper sprayed victims during the robbery on December 23, 2020. ECF No. 205-1 at 5–9. Second, Petitioner claims that counsel failed to object to his classification as a career criminal under the sentencing guidelines and to the Court's finding that Hobbs Act robbery is a crime of violence. *Id*. at 9–14. Petitioner argues that these errors constitute deficient representation and prejudiced him in the form of a higher sentence than he would have received with competent representation.

### 1. Counsel's Failure to Object to the Court's Misstatement of Fact During Sentencing

During the sentencing hearing, the Court erroneously stated that Petitioner pepper sprayed victims during the robbery, ECF No. 210 at 21–22, when according to the stipulated facts, one of Petitioner's co-defendants committed this conduct—not Petitioner, ECF No. 62 at 12. Petitioner contends that his counsel's failure to object to this misstatement resulted in a "high end sentence." ECF No. 205 at 4. As an initial matter, contrary to Petitioner's contention, ECF No. 205-1 at 5-6, neither the plea agreement nor the PSR contains any misstatement that Petitioner pepper-sprayed the robbery victims. *See* ECF No. 62 at 10. The only misstatement on the record as to Petitioner's

7

responsibility for the pepper spray was made by the Court during the sentencing hearing. *See* ECF No. 210 at 21–22. Furthermore, the Court did not impose a "high end sentence"; to the contrary, the Court accepted the parties' stipulated total sentence of 12 years of imprisonment and, in doing so, imposed a downward variance from the advisory guidelines range.

Petitioner cites no legal authority for the proposition that a defense attorney's failure to object to factual findings made by a court automatically amounts to incompetence under "prevailing professional norms," *Harrington*, 562 U.S. at 88, falls outside "the wide range of professionally competent assistance," *Buck*, 580 U.S. at 118 (internal quotations omitted), or is otherwise objectively unreasonable, *see Strickland,* 466 U.S. at 688. Petitioner cites *Johnson v. United States*, 313 F.3d 815 (2d Cir. 2002), in support of his argument that "it is per se unreasonable to fail to object to an erroneous PSR." ECF No. 205-1 at 6. Petitioner's reliance upon *Johnson* is misplaced. First, *Johnson* does not announce any per se rule. Second, *Johnson* is readily distinguishable from Petitioner's case. In *Johnson*, the defendant's total offense level was incorrectly calculated due to an error in his PSR, and as a result, the defendant received a sentence at the "very top" of the guidelines range that should have been applied. 313 F.3d at 818. The U.S. Court of Appeals for the Second Circuit found that the petitioner "was prejudiced by his attorney's failure to object to the sentencing calculation error." *Id.* In the instant case, Petitioner does not identify any factual error or error in the sentencing guidelines computation outlined in the PSR.

Even assuming that his attorney's failure to object to the Court's factual error was professionally deficient, Petitioner cannot show that his attorney's error prejudiced the outcome of the case. Petitioner stipulated a total prison sentence of 12 years when he entered his plea agreement, nearly seven months before the sentencing hearing where the factual error was made. The statement of facts outlined in the plea agreement and PSR correctly attributed the pepper

spraying of victims to Petitioner's co-defendant. Petitioner does not argue—nor could he credibly argue—that he agreed to a 12-year sentence based on any factual error. The Court ultimately imposed the sentence stipulated by Petitioner in his plea agreement. Petitioner offers no reason to believe the outcome would have been different had the Court not mistakenly attributed the pepper spraying of victims to Petitioner at sentencing.

Because he cannot demonstrate that he was prejudiced by his counsel's choice not to object to the factual misstatement at sentencing, Petitioner cannot prevail on any claim of ineffective assistance based on this omission.

### 2. Counsel's Alleged Failure to Argue that Hobbs Act Robbery Is Not a Crime of Violence

Next, Petitioner argues that his counsel was ineffective for failing to argue that Hobbs Act Robbery is not a crime of violence under 18 U.S.C. § 924(c) or a crime of violence under the Career Offender guidelines in U.S.S.G. § 4B1.1. ECF No. 205-1 at 11. Petitioner also argues that the Court "committed a plain-error in improperly calculating the sentencing guidelines." *Id.* Petitioner is mistaken in each of these points.

First, the record is clear that Petitioner was not sentenced as a career offender under U.S.S.G. § 4B1.1. No career offender enhancement was applied either in the PSR or by the Court at sentencing. *See* ECF No. 65 (PSR); ECF No. 84 (Amended PSR); ECF No. 210 at 7–8 (guidelines computation at sentencing).

Second, the Hobbs Act robbery to which Petitioner pleaded guilty constitutes a "crime of violence" under 18 U.S.C. § 924(c). *See United States v. Mathis*, 932 F.3d 242, 266 (4th Cir. 2019); *United States v. Ivey*, 60 F.4th 99, 116–17 (4th Cir.), *cert. denied*, 144 S. Ct. 160 (2023); *United States v. Green*, 67 F.4th 657, 671 (4th Cir. 2023). The force clause of § 924(c) defines a crime of violence as an offense which "has as an element the use, attempted use, or threatened use of

physical force against the person or property of another[.]" 18 U.S.C. § 924(c)(3). In turn, the elements of Hobbs Act robbery include "actual or threatened force, or violence, or fear of injury, immediate or future, to [a victim's] person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining." 18 U.S.C. § 1951(b)(1). The Fourth Circuit has held multiple times that the commission of a Hobbs Act robbery qualifies as a "crime of violence" under § 924(c). *See Mathis*, 932 F.3d at 266 (4th Cir. 2019); *Ivey*, 60 F.4th at 116–17; *Green*, 67 F.4th at 671.

Petitioner's counsel was not ineffective for failing to object to the application of § 924(c) to Petitioner's Hobbs Act robbery because there was no meritorious objection to be made. *See Truesdale v. Moore*, 142 F.3d 749, 755 (4th Cir 1998) ("It was not constitutionally ineffective assistance for [defendant's] resentencing counsel not to pursue futile claims.").

### 3. Petitioner's Knowing and Voluntary Stipulation to a Total 12-Year Sentence

Petitioner's ineffective assistance claims fail for the additional reason that he cannot show a reasonable probability that he would have declined to enter his plea agreement, in which he stipulated a total 12-year prison sentence, and would have instead proceeded to trial but for his attorney's alleged errors. *See Hill*, 474 U.S. at 59; *United States v. Murillo*, 927 F.3d 808, 815 (4th Cir. 2019). To the contrary, at the time he signed the plea agreement, Petitioner affirmed that he was "completely satisfied with the representation of [his] attorney." ECF No. 62 at 10. He confirmed under oath that he was completely satisfied with his counsel's performance during the Rule 11 colloquy at his guilty plea hearing. ECF No. 212 at 6:19–7:6, 7:19–8:7. "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established . . . ." *United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005).

10

Here, Petitioner presents no extraordinary circumstances that undermine the credibility of his sworn statements that he was completely satisfied with his counsel's performance at the time he agreed to a total 12-year sentence and entered his guilty pleas pursuant to Rule 11(c)(1)(C).

The only errors Petitioner alleges that his attorney made were at sentencing. By that time, he had already agreed to a 12-year prison sentence, and that is the sentence he ultimately received. Petitioner offers no reason to suggest that the errors Petitioner claims his attorney made affected the outcome of the case. He does not claim that, but for the alleged errors, the Court would have rejected the parties' stipulated 12-year sentence, and that Petitioner would have elected to proceed to trial. Therefore, Petitioner's claims of ineffective assistance fail to satisfy *Strickland*'s prejudice prong.

To be certain, Petitioner's guilty pleas were made voluntarily and intelligently and were therefore constitutionally valid. *Brady v. United States*, 397 U.S. 742, 748 (1970). During the guilty plea hearing, the Court conducted a Rule 11 colloquy with Petitioner, asking him a series of questions to confirm he was entering the guilty plea voluntarily and knowingly. ECF No. 212 at 4–29. The Court confirmed that Petitioner understood his rights related to trial as well as his right to choose not to enter a guilty plea. *Id.* at 17–21. Petitioner now claims that he did not understand that as part of his plea agreement, he was waiving constitutional rights. ECF No. 205-1 at 8. This assertion is contradicted by Petitioner's sworn statements during the Rule 11 colloquy. The Court told Petitioner that he had a right to plead not guilty and to proceed to trial, a right to a jury trial and to the assistance of counsel at trial, a right to cross-examine witnesses for the prosecution and to present witnesses of his own, and a right to decide whether to testify in his own defense, among other rights. ECF No. 212 at 16–19. Each time, when asked if he understood that he was waiving these rights, Petitioner responded affirmatively. *Id.* Petitioner also stated he understood his

11

agreement to a total prison sentence of 12 years—specifically, five years as to Count Three and seven years as to Count Four, to run consecutively. *Id.* at 8:14–9:6. The totality of Petitioner's responses during his plea hearing indicate that he fully understood the nature of the charges against him, the terms of the plea agreement, and his waiver of certain constitutional rights.

Because Petitioner cannot show that the outcome of his case was prejudiced by any error of his counsel, Petitioner's Motion to Vacate under 28 U.S.C. § 2255 must be denied.

### IV.     CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Because the accompanying Order is a final order adverse to the applicant, 28 U.S.C. § 2253(c)(1) requires issuance of a certificate of appealability before an appeal can proceed. A certificate of appealability may issue if the prisoner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects constitutional claims on the merits, a petitioner may satisfy the standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner has failed to satisfy this standard on any of his claims. Therefore, a certificate of appealability shall not issue.

### V.     CONCLUSION

For the foregoing reasons, the Court will deny Petitioner's Motion to Vacate and deny a certificate of appealability.

A separate Order will follow.

| | |
|---|---|
| 10/28/24 | /S/ |
| Date | Matthew J. Maddox<br>United States District Judge |